# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 18, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2025-SC-0126-MR

ALLIED WORLD SPECIALTY INSURANCE COMPANY, FORMERLY KNOWN AS DARWIN NATIONAL ASSURANCE COMPANY

APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2024-CA-1068
FRANKLIN CIRCUIT COURT NO. 16-CI-00446

HONORABLE THOMAS D. WINGATE, JUDGE, FRANKLIN CIRCUIT COURT

APPELLEE

AND

BOARD OF REGENTS OF KENTUCKY STATE UNIVERSITY AND KENTUCKY STATE UNIVERSITY

REAL PARTY IN INTEREST / APPELLEES

**MEMORANDUM OPINION OF THE COURT**
**AFFIRMING IN PART, REVERSING IN PART, & REMANDING**

Allied World Specialty Insurance ("Allied World") appeals from the Court of Appeals' denial of its petition for a writ of prohibition to prevent Judge Thomas Wingate of the Franklin Circuit Court from enforcing specific discovery orders. After a thorough review of the record presented and the applicable law, we affirm in part, reverse in part, and remand.

**FACTUAL & PROCEDURAL BACKGROUND**

In 2012, Appellant Allied World issued an employment practices liability insurance policy to Real Party in Interest Kentucky State University ("KSU"). The policy was later renewed to cover claims made and reported through July 1, 2015.

On April 27, 2016, former KSU employee Sirrethia Fox filed an employment discrimination lawsuit against KSU (the "Fox Suit"). KSU sought coverage from Allied World for the Fox Suit in mid-2018.[1] Allied World denied KSU's claim because it was made outside the period covered by the policy.

Notably, however, the policy also included a provision that a claim reported outside the period covered by the policy would nonetheless be deemed timely if it related to an earlier timely claim. KSU contended its claim fell within this provision because it related to an earlier timely claim filed regarding another former employee, Stephanie Bastin. Allied World considered KSU's position, consulted with outside counsel, and ultimately determined that the two claims were not "related." Allied World therefore continued to deny coverage because it deemed KSU's claim for coverage on the Fox Suit untimely. It was later judicially determined however that the two claims were unequivocally related.

KSU then filed a third-party complaint against Allied World in October 2018. KSU sought a declaration that the policy obligated Allied World to

_____

[1] The reason for KSU's delay in presenting the Fox Claim to Allied World is not apparent from the record.

2

provide coverage for KSU's liability to Fox, which KSU had settled shortly after filing its third-party complaint. KSU also stated bad-faith claims against Allied World for its refusal to provide coverage.

The Franklin Circuit Court bifurcated the coverage and bad-faith claims. With regard to coverage, the trial court concluded that the Fox and Bastin matters were related, and that KSU's claim for coverage on the Fox Suit was therefore timely and covered under the policy. Allied World appealed, the Court of Appeals affirmed, and we denied discretionary review. *See Allied World Spec. Ins. Co. v. Bd. of Regents of Ky. State Univ.*, No. 2020-CA-1166-MR, 2021 WL 4805254 (Ky. App. Oct. 15, 2021). Allied World then paid KSU in full for the settlement KSU had paid to Fox.

With the coverage issue resolved, the parties returned to litigation of KSU's bad-faith claim. In discovery, KSU propounded in relevant part the following discovery requests:

> Interrogatory No. 3: Please identify and describe every communication between [Allied World] and [KSU] that relates to the subject insurance claim.
>
> Interrogatory No. 4: Please identify every communication between [Allied World] and any of [its] employees, or between any of [its] employees, independent contractors, independent adjusters, or attorneys, related to the instant case and the subsequent claim made against [Allied World] by KSU.
>
> Request for Production No. 2: Any and all correspondence or communications between [Allied World] or anyone acting on [its] behalf, relating to KSU's claim, if not contained in the claim file.
>
> Request for Production No. 3: A complete copy of [Allied World's] claim file, [its] home office file, and any other files, correspondence, notes, electronic media, electronic

3

communications, diary notes, which pertain in any way to KSU's claim. This request includes all correspondence with any attorneys. If you object to producing communications on the basis of attorney-client privilege, then please produce a privilege log stating the date of the communication, the general topic of the communication and the reason for your objection to producing.

KSU also propounded requests for production seeking personnel records for certain Allied World employees for the prior ten years.

In response, Allied World produced its outside coverage counsel's file, asserting it was doing so under a "partial waiver of attorney-client privilege only to communications between those attorneys and Allied World regarding coverage of the Fox insurance claim." However, Allied World declined to produce any claims-handling documents post-dating KSU's filing of its bad-faith claim against Allied World.

Allied World moved for summary judgment. KSU responded that summary judgment would be premature because discovery was ongoing, and also sought an order compelling Allied World to correct alleged deficiencies in its discovery responses. The trial court denied the summary judgment motion and granted KSU's motion to compel. Allied World then provided a supplemental production of documents to KSU, along with a privilege log identifying withheld documents and the individuals, dates, and subject or content for those documents.

KSU filed another motion to compel, again contending that Allied World had not fully responded to pending discovery requests. More particularly, KSU pointed to two categories of documents that Allied World had failed to produce.

First, KSU sought communications and other documents pertaining to KSU's claim through the date the claim was paid in March 2022. Allied World responded that it had already produced all such documents created before it was served with KSU's third-party complaint, and that documents created after that date were not discoverable and in many cases also privileged. However the privilege log that Allied World had provided to KSU was not provided to the trial court in connection with the discovery dispute.

Second, KSU sought the personnel files of a number of Allied World employees. Allied World responded that it had produced the performance reviews for certain employees, and that the personnel files of the remaining employees were irrelevant because those employees were not involved in coverage decisions but rather only litigation matters.

The trial court granted KSU's motion to compel and ordered Allied World to produce all documents relating to KSU's claim, including documents post-dating KSU's filing of litigation against Allied World. The trial court also ordered Allied World to produce the requested personnel files. The trial court further specifically rejected Allied World's assertions of privilege, concluding that Allied World could not withhold coverage-related documents under a claim of attorney-client privilege.

Allied World petitioned the Court of Appeals for a writ of prohibition, contending the trial court's order was erroneous because it required the production of undiscoverable, privileged, and irrelevant documents. Allied World also provided the Court of Appeals with a privilege log. The Court of

5

Appeals denied the writ, concluding that evidence of post-litigation conduct is discoverable and that Allied World failed to meet its burden of proof to demonstrate any withheld documents were privileged because it had not provided a privilege log to the trial court. Allied World now appeals.

## ANALYSIS

As we have frequently noted, a writ may be issued in two classes of cases. First, a writ may be issued where the petitioner demonstrates that "the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court." *State Farm Mut. Auto. Ins. Co. v. Edwards*, 670 S.W.3d 873, 878 (Ky. 2023) (quoting *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004)). Here, Allied World does not challenge the jurisdiction of the Franklin Circuit Court, and thus this matter does not fall within this first class of cases.

The second class of writ cases involves matters in which "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise." *Id.* In this second class of cases, the petitioner generally must show that "great injustice and irreparable injury will result if the petition is not granted." *Id.* (quoting *Hoskins*, 150 S.W.3d at 10). However, there are also certain "special cases" within this second class in which a writ may be issued even absent a showing of great injustice and irreparable injury, but only if the petitioner demonstrates that "'a substantial miscarriage of justice' will occur if the lower court proceeds erroneously, and correction of the error is necessary 'in the interest of orderly

6

judicial administration.'" *Id.* (quoting *Independent Order of Foresters v. Chauvin,* 175 S.W.3d 610, 616 (Ky. 2005)).

In reviewing a lower court's decision regarding a petition for a writ, we review its factual findings for clear error. *Id.* at 879. We review the lower court's legal conclusions *de novo. Id.* Finally, because the decision as to whether to issue a writ lies within the discretion of the lower court, we review the court's decision as to whether to issue the writ for an abuse of discretion. *Id.* Having thus laid out our general framework for considering lower court rulings regarding petitions for writs, we turn now to the merits of the present appeal.

## I.    The Trial Court Correctly Required Allied World To Produce Post-Litigation Materials Relating To Its Settlement Conduct, But Erred In Ordering The Production of Other Post-Litigation Materials.

Allied World first claims the trial court erred in requiring it to produce documents that it contends are not discoverable in a bad faith action. More particularly, the trial court ordered Allied World to produce *all* responsive documents relating to KSU's claim for coverage, including documents after KSU's filing of litigation against Allied World. Allied World asserts that under this Court's precedent, however, *none* of its claims handling documents that post-date KSU's filing of litigation against it are discoverable. We conclude the trial court's discovery order was correct insofar as it requires Allied World to produce post-litigation materials relating to Allied World's settlement conduct, but erroneous to the extent it requires the production of other post-litigation documents. Indeed, our precedents make clear that non-settlement post-

7

litigation documents are neither admissible *nor discoverable* in a bad faith action.  We further conclude a writ is warranted to remedy the trial court's error.

In *Knotts v. Zurich Insurance Company*, this Court considered whether a plaintiff could rely on an insurer's post-litigation conduct to support a bad faith claim.  197 S.W.3d 512, 515 (Ky. 2006).  We concluded that an insurer's obligation not to act in bad faith extended past the filing of litigation, and thus an insurer's post-litigation conduct could support a bad faith claim.  *Id.* at 517.

We then proceeded to consider the ancillary issue of "what sorts of post-filing conduct by an insurer will be admissible in a bad faith action."  *Id.* at 518.  We held that evidence of an insurer's "settlement behavior," including settlement conduct after the filing of litigation, is admissible to support a bad-faith claim.  *Id.* at 523.  Such evidence relates to matters such as the insurer's making of or refusal to make offers to settle the demand for coverage, or responses to such offers by the claimant.  *See id.*  We reasoned settlement conduct evidence is admissible to support a bad faith action because the trial court does not oversee settlement negotiations and thus there is no available remedy in the litigation for bad faith settlement conduct by the insurer.  *Id.*; *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 591 (Ky. 2021) ("Because there is no recognized process for trial court intervention or procedural relief available for bad-faith settlement conduct, evidence of such conduct may be admitted as proof in a bad-faith claim.").

8

We also held in *Knotts*, however, that evidence of the insurer's "other litigation conduct" is *not* admissible to prove a bad faith claim. 197 S.W.3d at 523. We agreed with the reasoning of the Montana Supreme Court that

> [p]ublic policy favors the exclusion of evidence of an insurer's [other] post-filing litigation conduct in at least two respects. First, permitting such evidence is unnecessary because during the initial action, trial courts can assure that defendants do not act improperly. Next, and more importantly, the introduction of such evidence hinders the right to defend and impairs access to the courts.

*Id.* at 520 (quoting *Palmer v. Farmers Ins. Exch.*, 861 P.2d 895, 913-15 (Mont. 1993)). We also rejected any retreat from a "strict rule against allowing the introduction of [other] litigation conduct by an insurer," preferring instead "an *absolute prohibition* on the introduction of such evidence" in bad faith actions. *Id.* at 522 (emphasis added).

In the present case, the Court of Appeals acknowledged our holding in *Knotts* that non-settlement post-litigation conduct is not *admissible* in a bad faith action, but declined to extend that holding to the *discoverability* of such materials. In drawing this distinction, the Court of Appeals erred. First, while *Knotts* indeed addressed the admissibility of such materials, we have noted elsewhere that such materials are *also* exempt from discovery. *Mosley*, 626 S.W.3d at 592 ("[W]e are to decide if the evidence [claimant] sought to discover would be probative of [insurers'] litigation techniques, *which are not discoverable,* or settlement conduct, *which is discoverable.*") (emphasis added).

Second, *Knotts* itself noted that non-settlement post-litigation conduct by an insurer is "not relevant to the insurer's decision to deny coverage." 197

9

S.W.3d at 521. And of course, irrelevant materials are not discoverable. Rule of Civil Procedure ("CR") 26.02(1) ("Parties may obtain discovery regarding any matter, not privileged, which is *relevant* to the subject matter involved in the pending action.") (emphasis added). Finally, *Knotts* also explained that "[t]he most serious policy consideration" for prohibiting admission of non-settlement post-litigation conduct is that "if defending a questionable claim were actionable as bad faith, it would impair the insurer's right to a zealous defense and even its right of access to the courts." 197 S.W.3d at 520 (quoting *Palmer*, 861 P.2d at 913-15). This reasoning is equally applicable to discovery, given the potential for *discovery* into an insurer's litigation strategies to likewise make the insurer "reluctant to contest coverage of questionable claims." *Id.* at 521.

In sum, while *Knotts* addressed the admissibility of post-litigation non-settlement conduct, we made clear in *Mosley* that such materials are also not discoverable in a bad faith action. Moreover, the reasoning set forth in *Knotts* is as equally applicable to discovery as it is to admissibility. We therefore reiterate again today that an insurer's non-settlement post-litigation conduct is neither admissible nor discoverable in a bad faith action.

As such, the Court of Appeals' legal conclusion that a writ was not warranted because there is no prohibition against discovery regarding non-settlement post-litigation conduct was erroneous. Moreover, the trial court's discovery order requiring Allied World to produce *all* post-litigation documents was also in error. Under the relevant discovery requests, KSU seeks evidence

10

of Allied World's post-litigation conduct. The trial court simply ordered Allied World to respond to those requests without limitation, rather than appropriately limiting them to the discoverable matters of Allied World's settlement behavior and excluding from the discovery Allied World's other post-litigation conduct. Thus, to the extent the trial court required Allied World to produce post-litigation documents other than those relating to settlement behavior, it was overly broad.

We further conclude that a writ may be issued to correct the trial court's error. As noted above, a writ in a second-class case such as this requires a showing that 1) the lower court erred, 2) there would be no adequate remedy by way of appeal, and 3) in the absence of a writ either great and irreparable injury will occur, or a substantial miscarriage of justice will occur and correction of the trial court's error is necessary in the interest of orderly judicial administration. *State Farm*, 670 S.W.3d at 878.

Here, the trial court indeed erred in ordering Allied World to produce all post-litigation documents, rather than only those post-litigation documents relating to settlement conduct. In addition, a party erroneously ordered to produce evidence in discovery generally does not have an adequate remedy by way of appeal because "[o]nce the information is furnished it cannot be recalled . . . . The injury suffered . . . will be complete upon compliance with the order and such injury could not thereafter be rectified in subsequent proceedings in the case." *Id.* at 879 (quoting *Bender v. Eaton*, 343 S.W.2d 799, 802 (Ky.

11

1961)).  Thus, the first two requirements for issuance of a writ are satisfied here.

As for the third element, while an order requiring production of merely irrelevant materials does not inflict "great and irreparable injury," it nonetheless may warrant a writ if production of the materials "would be 'a substantial miscarriage of justice . . . *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration.'" *Grange Mut. Ins. Co. v. Trude,* 151 S.W.3d 803, 811 (Ky. 2004).

Such is the case here.  As noted in *Knotts*, the exemption of non-settlement post-litigation conduct from bad faith actions serves a critical purpose of the judicial system, namely to avoid undue interference with an insurer's right to challenge questionable claims and mount a legitimate defense without fear of liability for such conduct.  197 S.W.3d at 522.  We specifically noted the "chilling effect that allowing introduction of evidence of litigation conduct would have on the exercise of an insurance company's legitimate litigation rights."  *Id.*  And we also recognized that any rule to the contrary would "raise[] distinct concerns about prejudice to the insurance company" and "threaten[] to turn our adversarial system on its head."  *Id.* at 522-23.

While these concerns were articulated with respect to the admissibility of post-litigation conduct, they are equally applicable to the discovery of such conduct.  Allowing a bad faith plaintiff to obtain and review an insurer's internal non-settlement litigation strategies, techniques, communications, and other conduct likewise raises a risk that the insurer will be chilled in the

12

exercise of its legitimate right to litigate questionable claims and pursue legitimate defenses. The Court must balance the need to expose wrongful insurance practices with the competing important need to defend against frivolous claims. It also raises a distinct risk of prejudice to the insurer, given the uneven playing field that would result from allowing the plaintiff unilateral access to the insurer's internal litigation strategies, communications, and other materials. Given that our rule prohibiting the discovery of an insurer's non-settlement litigation conduct thus protects the vital need to ensure that every litigant has a fair and equal opportunity to litigate and present legitimate defenses, the trial court's order requiring Allied World to produce such materials constitutes a substantial miscarriage of justice. Moreover, correction of that error is necessary and appropriate in the interest of orderly judicial administration. As such, a writ prohibiting the trial court from requiring Allied World to produce non-settlement post-litigation materials is warranted, and the Court of Appeals erred in denying such a writ.

II. **No Writ Is Warranted For Privileged Or Attorney Work Product Materials Regarding Allied World's Post-Litigation Settlement Behavior.**

Allied World next contends the trial court erred in requiring it to produce documents protected by the attorney-client privilege and the attorney work product doctrine. We disagree because Allied World waived those protections by invoking an advice-of-counsel defense.[2]

---

[2] Our discussion here is limited to allegedly privileged post-litigation documents that relate to settlement conduct. As noted above, post-litigation documents regarding other matters are not discoverable at all, whether otherwise privileged or not.

13

As an initial matter, we note that the Court of Appeals declined to reach the merits of Allied World's privilege arguments, concluding instead that no writ could be issued because Allied World failed to present a privilege log to the trial court. However, a petition for writ is not an appeal from a decision by the trial court, but rather an original action filed to obtain a writ directing or prohibiting action by the lower court. *Trude*, 151 S.W.3d at 810. As such, the court considering the writ petition acts not in its appellate jurisdiction, but rather as a trial court. *Id.* ("[T]he petition for a writ is an original action in which the court that hears the petition . . . acts as a trial court.").

We have thus previously noted that a court hearing a petition for a writ involving discovery issues may itself examine the documents at issue, review a privilege log, or conduct *in camera* review to determine whether a writ is warranted. *See id.* at 818. ("[I]t is unclear that the Court of Appeals actually needed to see the records themselves. A thorough description of the records, perhaps in the form of a privilege log, would have been enough to show irreparable harm . . . . [Petitioner] could even have moved the Court of Appeals to undertake an *in camera* review in order to determine whether discovery of the records would have caused great and irreparable harm."); *Lexington Pub. Library v. Clark*, 90 S.W.3d 53, 62-63 (Ky. 2002) (noting that in absence of documents or a privilege log, court was unable on writ petition "to determine by *de novo* review whether any of the communications fall within the lawyer-client privilege"). Here, Allied World submitted such a privilege log to the Court of Appeals, but that court declined to review it because Allied World had not

14

submitted the log to the trial court. This was in error, as the Court of Appeals was sitting as a trial court in considering the writ petition and thus properly could have considered the privilege log that Allied World submitted.

In any event, Allied World also was not making the type of fact-specific arguments regarding privilege that would necessitate review of a privilege log. Rather, Allied World's argued that broad categories of documents were not discoverable as a matter of law. Where a party's assertion of privilege turns not on the specific factual details of particular documents, but rather on whether broad categories of documents are discoverable as a matter of law, the issue presents a question of law that may be resolved without review of a privilege log. Thus, because in the present case Allied World was not asserting that the factual specifics of particular documents demonstrated that they were privileged, but rather simply that all post-litigation documents and personnel files were not discoverable as a matter of law, no privilege log was necessary. Thus, to the extent the Court of Appeals declined to consider the merits of Allied World's petition due solely to Allied World's failure to present the trial court with a privilege log, it erred.

That said, we nonetheless agree that no writ is warranted regarding the trial court's discovery order requiring Allied World to produce privileged and attorney work product materials. Quite simply, Allied World waived attorney-client privilege by raising an advice-of-counsel defense and KSU's need for Allied World's attorney work product is sufficient to override the protections of the attorney work product doctrine.

15

Admittedly, the attorney-client privilege is absolute and may not be overcome simply because the materials at issue may be useful, or even essential, to the opposing party's case. *The St. Luke Hosps., Inc. v. Kopowski*, 160 S.W.3d 771, 777 (Ky. 2005) ("[A]ttorney-client privileged communications . . . are not discoverable even when the information is essential to the underlying case and cannot be obtained from another source."). However, a party also may waive the attorney-client privilege by raising an advice-of-counsel defense:

> The client may waive the [attorney-client] privilege by taking positions that place the substance of the communications in issue . . . . A position that seems often to bring implied waiver into play is clients' claim that they acted or refrained from acting on advice of counsel . . . . With this and other similar positions, the inquiry for the trial court "is whether allowing the privilege to protect against disclosure of the information would be manifestly unfair to the opposing party."

*3M Co. v. Engle*, 328 S.W.3d 184, 188-89 (Ky. 2010).

Here, Allied World has raised an advice-of-counsel defense. More particularly, in responding to KSU's interrogatory seeking legal opinions justifying Allied World's denial of coverage, Allied World produced otherwise privileged communications with its counsel. Given that Allied World seeks to rely on this advice of counsel to justify its denial of coverage, it would be manifestly unfair to protect other attorney-client privileged materials relating to Allied World's decision to deny coverage from discovery. Otherwise, Allied World could selectively choose to produce those communications that support its defense while withholding as privileged those communications, if any, that might undercut that defense. Thus, because Allied World has invoked an

16

advice-of-counsel defense against KSU's bad faith claim, it has waived the attorney-client privilege for any materials relating to its coverage decision.

KSU is also entitled to discovery of Allied World's attorney work product materials. Unlike the attorney-client privilege, the attorney work product doctrine is not absolute. To the contrary, otherwise protected attorney work product materials are discoverable "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." CR 26.02(3)(a).

We have previously noted that bad faith actions are one context in which the settlement actions of counsel are distinctly at issue, and thus the protections of the attorney work product doctrine must give way to the plaintiff's need for discovery regarding settlement conduct:

> "A plaintiff has a good chance of obtaining opinion work product from a defendant's counsel when the claim is that an insurance company wrongfully refused to settle an insurance claim . . . . [T]he crucial issues that form the proof for the claim are likely to include what the lawyer knew, when the lawyer knew it, and how the lawyer knew it. Thus, the nature of the claim itself often necessarily puts work product into play."
>
> . . . .
>
> While an attorney's private thoughts are most certainly deserving of special protection, that concern for privacy must give way when the activities of counsel are directly at issue in subsequent litigation.

*Morrow v. Brown, Todd & Heyburn*, 957 S.W.2d 722, 726 (Ky. 1997) (citation omitted).

17

Here, KSU's bad faith claim places in issue the settlement actions of Allied World's counsel in the handling of KSU's request for coverage. In addition, KSU has no other source from which it may obtain Allied World's internal attorney work product relating to that conduct. Thus, because KSU has substantial need of the attorney work product to prepare its case and may not obtain that information elsewhere, the attorney work product doctrine does not apply to protect the materials from discovery.

In sum, there was no error in the trial court's order directing Allied World to produce attorney-client privileged materials because Allied World waived that privilege by raising an advice-of-counsel defense. Nor was there error in the trial court's order for Allied World to produce attorney work product, given KSU's substantial need for those materials and its inability to obtain them elsewhere. As such, no writ is warranted regarding those aspects of the trial court's discovery order.

### III. A Writ Is Warranted To Remedy The Trial Court's Overly Broad Discovery Order Regarding The Personnel Files.

Allied World's final basis for seeking a writ is the trial court's discovery order directing it to produce the personnel files of certain employees. The discovery request at issue sought "all personnel records" for those employees for a period of ten years prior to the date of the request. The trial court ordered Allied World to produce responsive documents without limitation.

Notably, however, in *Trude* we made clear that while some portions of a personnel record may be relevant to a bad faith claim, others will not be relevant:

> [M]any of the items likely to be found in personnel records (e.g., original job application, marital information, tax and dependent data, medical information, health insurance data, worker's compensation claims, and retirement account data) are irrelevant to a bad faith claim and thus are not discoverable. Thus, [plaintiff's] discovery requests, to the extent that such truly personal items are covered, are overly broad.
>
> Other information to be found in personnel files (e.g. related to job performance, bonuses, wage and salary data, disciplinary matters) is relevant to [plaintiff's bad faith] claim. Job performance and disciplinary information could help show that the adjusters and their superiors had engaged in bad faith practices in adjusting [plaintiff's] initial claim or that they had engaged in bad faith practices at other times. This information could also show [the insurer's] knowledge or even approval of such practices. This makes those portions of the personnel records related to job performance and disciplinary matters discoverable.

151 S.W.3d at 815. Here, however, the trial court ordered the personnel records produced without limitation. This was overly broad, as the entire "personnel records" requested likely include both the types of materials found relevant to a bad faith claim in *Trude*, as well as those "truly personal items" irrelevant to such a claim.[3]

A writ is an appropriate remedy to correct the trial court's erroneous requirement that Allied World produce irrelevant and personal portions of the personnel records. As noted above, Allied World would have no adequate remedy by appeal from the trial court's order directing that discovery. *State Farm*, 670 S.W.3d at 879 ("[T]here will rarely be an adequate remedy on appeal

---

[3] To the extent the requests seek relevant documents from the personnel records for a period of ten years, they are proper. A window of ten years is appropriate to allow KSU a full and fair opportunity to obtain evidence of any prior bad faith conduct by Allied World that might be relevant to prove KSU's claim here.

if the alleged error is an order that allows discovery.") (quoting *Trude*, 151 S.W.3d at 806, 810). Moreover, a "certain special cases" writ may be issued to protect against an order requiring the production of irrelevant and personal information from a personnel file. *Trude*, 151 S.W.3d at 818. Requiring the production of such personal and irrelevant employee information would be a substantial miscarriage of justice in that it would constitute a deeply intrusive and unwarranted invasion of the employees' privacy. Moreover, correction of that error is necessary and appropriate in the interests of judicial administration to ensure that the judiciary does not permit such unnecessary and invasive discovery. Accordingly, a writ is also warranted prohibiting the trial court from requiring the production of "truly personal" and irrelevant information from the personnel files at issue.[4]

In sum, we conclude that the trial court's discovery order was in some respects proper, and in other respects overly broad. To the extent the trial court ordered Allied World to produce materials relating to post-litigation settlement conduct, including attorney work product and documents that would fall within the attorney-client privilege but for Allied World's waiver of

---

[4] Allied World argues that some of the employees at issue were not involved in claims handling and thus their personnel records are wholly irrelevant to KSU's bad faith claim. However, it is the uniquely personal nature of certain portions of those personnel files that warrants the issuance of a "certain special cases" writ. Requiring the production of portions of the personnel files that are merely irrelevant but do not also involve an invasion of the employee's privacy does not rise to the level of a great and irreparable injury or a substantial miscarriage of justice warranting a writ. *See id.* at 811 (noting that production of irrelevant information warrants a writ only if such "production would be 'a substantial miscarriage of justice . . . *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration.'"). Thus, we direct the issuance of a writ only to the extent the personnel files at issue contain "truly personal" information.

20

that privilege by the raising of an advice-of-counsel defense, the trial court's order was correct. However, to the extent the trial court ordered Allied World to produce *other* post-litigation documents, its order was in error.

Similarly, to the extent the trial court ordered Allied World to produce personnel file materials relating to relevant matters such as job performance, bonuses, wage and salary data, and disciplinary matters, the order was proper as such matters are relevant to KSU's bad faith claims. However, to the extent the trial court ordered Allied World to also produce "truly personal" information within those personnel files, such as job applications, marital information, health insurance information, worker's compensation claims, and retirement account data, the trial court erred. Accordingly, because a "certain special cases" writ is warranted to remedy the trial court's errors, we affirm in part, reverse in part, and remand with direction to the Court of Appeals for entry of a writ of prohibition in conformity with this Opinion.

## CONCLUSION

We affirm in part, reverse in part, and remand this matter to the Court of Appeals for entry of a writ of prohibition consistent with this Opinion.

All sitting. All concur.

21

COUNSEL FOR APPELLANT:

F. Maximilian Czernin
G. Luke Burton
Stephanie Dunbar
Squire Patton Boggs LLP


COUNSEL FOR REAL PARTIES IN INTEREST APPELLEES:

M. Austin Mehr
Philip G. Fairbanks
Mehr Fairbanks Trial Lawyers, PLLC


COUNSEL FOR APPELLEE:

Hon. Thomas D. Wingate